**In the Matter of Arnoldo J. CARVAJAL, Petitioner for Naturalization.**

**No. 111074.**

United States District Court
N. D. California, S. D.
July 16, 1957.

Jackson & Hertogs, San Francisco, Cal., for petitioner.

Daniel H. Lyons, Designated Naturalization Examiner, San Francisco, Cal., for the Government.

GOODMAN, District Judge.

This petition for naturalization tenders the question whether petitioner's deferment from service in the United States armed forces as a so-called "treaty alien" debars him from United States Citizenship.

Petitioner, a native of Costa Rica, was admitted to the United States for permanent residence on June 4, 1947 and has resided here ever since. On June 13, 1951, in accordance with the Selective

Service Act of 1948, 62 Stat. 604, 50 U.S. C.A.Appendix, § 451 et seq., he registered with the Selective Service System, Local Board 39, in San Francisco. At that time the Selective Service Act of 1948 subjected every male person residing in the United States, not specifically exempted by the Act, to liability for service in the armed forces. It provided, however, that any citizen of a foreign country, not statutorily exempt, might be relieved from liability for service if he applied for relief in the manner prescribed by the President, but that any person who made such application should thereafter be debarred from becoming a citizen of the United States. Petitioner was not within any of the classes of aliens statutorily exempt from military service.

The regulations promulgated by the President pursuant to the Act then provided that any alien registrant should be relieved from liability for service, who, prior to his induction, filed with his local board an Application for Relief from Military Service (SSS Form No. 130). An alternative method for securing deferment was prescribed by the presidential regulations for aliens who had not declared their intention to become a citizen and who were nationals of a country with which there was a treaty exempting nationals of that country from military service while within the United States. Deferment of such aliens was authorized if an application for their deferment was communicated by their government to the Department of State and approved by the Department.

On June 19, 1951, some six days after petitioner registered with his local board, the Selective Service Act of 1948 was amended. The amended language of the Act cast doubt upon the President's authority to thereafter provide for the deferment of aliens admitted for permanent residence. As amended, Section 4 (a) of the Act, 50 U.S.C.A.Appendix, § 454(a), stated generally that "every male citizen of the United States and every male alien admitted for permanent resi-

dence," if of a specified age, should be liable for military service. There followed a proviso that any male alien who had not been admitted for permanent residence, but who had remained in the United States for more than a year, should also be liable for military service, unless otherwise specifically exempted by the Act. This proviso concluded with the qualifying clause, "except that any such alien shall be relieved from liability for training and service under this title if, prior to his induction into the Armed Forces he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President; but any alien who makes such application shall thereafter be debarred from becoming a citizen." If Section 4(a) of the Act as amended were given a normal grammatical interpretation, this qualifying clause empowering the President by regulation to provide relief from liability for military service, would apply only to aliens not admitted for permanent residence.

On September 28, 1951, as a consequence of the amendments to the Selective Service Act, the President promulgated revised Selective Service Regulations. The Revised Regulations no longer provided for the deferment of all alien registrants who filed Applications for Relief from Military Service (SSS Form No. 130) with their local board. Under the Revised Regulations deferment on the basis of such application could only be granted aliens who had not been admitted for permanent residence. However, the Revised Regulations continued in effect the previous regulation that *any* alien should be deferred who was certified by the Department of State to be, or otherwise established that he was, exempt from military service under the terms of a treaty.

Meanwhile on July 30, 1951, a request by petitioner to be relieved from military service on the basis of a treaty between the United States and Costa Rica was transmitted by the Costa Rican Embassy.

to the Department of State. Thereafter the Department of State certified to the Selective Service System that petitioner's claim of exemption pursuant to the treaty was valid. Accordingly on December 19, 1951 petitioner was deferred from military service by his local board.

On December 24, 1952, the Immigration and Nationality Act of 1952, 66 Stat. 163, 8 U.S.C.A. § 1101 et seq. became effective. Section 315 of that Act, 8 U.S. C.A. § 1426, provides that:

"(a) Notwithstanding the provisions of section 405(b), any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

"(b) The records of the Selective Service System or of the National Military Establishment shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien."

On April 24, 1953 the Selective Service System issued Amended Local Board Memorandum No. 39 calling the attention of all local boards to the provisions of Section 315 of the Immigration and Nationality Act of 1952 and instructing them to "require every alien who desires exemption from military service under a treaty to sign a statement that he requests exemption from military service on the ground that he is an alien claiming an exemption under a treaty." The memorandum further directed that the provisions of Section 315 of the Immigration and Nationality Act of 1952 should appear on the same paper with such statement "as a matter of information to the registrant."

In accordance with this memorandum, petitioner's local board notified him by letter dated June 24, 1953 that "To be considered for exemption from military service in the armed forces of the United States by reason of the fact that you are an alien claiming such exemption under a treaty between this country and the country of which you are a citizen, it will be necessary for you to make a claim therefor in writing. You may make such claim by completing and executing the attached Form C-294 and filing it with this Board." Form C-294 contained the following statements:

1. I hereby request exemption from military service in the Armed Forces of the United States; that as an alien I claim such exemption under and pursuant to the terms of a treaty existing by and between the country of which I am a citizen and the United States of America;

2. That I request exemption from such military service with full knowledge of the provisions of Section 315 of the Immigration and Nationality Act that any alien who applies or has applied for exemption from training or service in the Armed Forces of the United States on the ground that he is an alien, or is or was relieved from training or service on such ground, shall be permanently ineligible to become a citizen of the United States; further, that the record of the Selective Service System shall be conclusive as to whether an alien was relieved from such liability for training or service because he was an alien.

This form was executed by petitioner on June 25, 1953 and forwarded to his local board. On August 22, 1953, petitioner wrote his local board that when he executed Form C-294 he assumed that a claim of exemption from military service on the basis of a treaty was not equivalent to an application for exemption on the ground of alienage within the meaning of Section 315 of the Immigration and Nationality Act of 1952. He had consequently concluded that a claim for exemption on the basis of a treaty would not bar him from United States citizenship. Although his letter does not

so state, after petitioner had executed Form C–294 he apparently was advised by some one that by doing so he may have rendered himself ineligible for United States citizenship. For he advised his local board in his letter that he was willing to enter the armed forces and desired to withdraw Form C–294. His local board took no action on this request.

On August 10, 1954, petitioner filed his present petition for naturalization. Thereafter on February 15, 1956, the President issued amended Selective Service Regulations providing that aliens admitted for permanent residence should not be relieved from military service even though they were granted exemption by treaty. As a consequence of this regulation, petitioner's local board revoked his deferment as a treaty alien and on April 1, 1956 reclassified him as 1–A, available for military service.

The Immigration and Naturalization Service opposes petitioner's naturalization on the ground that the request for exemption from military service which he made by filing form C–294 with his local board in 1953 constituted an application for exemption on the ground of alienage barring him from United States citizenship by virtue of the provisions of Section 315 of the Immigration and Nationality Act of 1952. No reliance is placed by the Immigration and Naturalization Service on petitioner's 1951 request for deferment which was communicated to the Department of State by the Costa Rican Embassy. It is the view of the Service that aliens for whom an application for deferment on the basis of a treaty was communicated by their government to the Department of State did not "apply" for exemption within the meaning of Section 315 of the Immigration and Nationality Act of 1952.

Petitioner urges that the request for exemption which he made on Form C–294 is not binding upon him because he executed the form in the belief that a request for exemption on the basis of a treaty did not constitute an application for exemption on the ground of alienage which would bar him from United States Citizenship. He cites his prompt attempt to withdraw Form C–294 as indicative of his good faith in this respect.

■ There is considerable justification for petitioner's contention that he was misled as to the significance of Form C–294. For it does not appear that this form served any purpose whatsoever. It constituted no more than a reiteration of a request for exemption from military service as a treaty alien which had previously been made and granted. Section 315 of the Immigration and Nationality Act is retroactive and applies equally to requests for deferment made before and after its effective date. Thus petitioner's request for exemption which he made in 1953 by executing Form C–294 is no greater bar to his naturalization than his request made and granted in 1951. There is not the slightest basis in reason for the view of the Immigration and Naturalization Service that an alien's application for deferment communicated at his request by his government to the Department of State does not constitute an application by the alien.

■ The fact that the Selective Service Regulations provided a special procedure for the deferment of aliens asserting a treaty exemption from military service might suggest that such aliens had a different status under the Selective Service Act than other aliens. But, the Selective Service Act gave treaty aliens no broader exemption from military service than any other aliens, and, indeed, did not even specially refer to them. And, in barring from citizenship aliens who have obtained exemption from military service on the ground of alienage, neither the Selective Service Act of 1948 nor the Immigration and Nationality Act of 1952 makes any distinction between an alien who cites a treaty in support of his claim for exemption and one who does not. It seems inescapable that the deferment requested and ob-

tained by petitioner in 1951 is a bar to his naturalization regardless of the effect of his reiteration of his claim for exemption in 1953.[1]

Petitioner seeks to avoid the effect of the 1951 deferment on the ground that such deferment was void because the 1951 amendments to the Selective Service Act deprived the President of authority to provide for the deferment of aliens admitted for permanent residence whether or not they were granted exemption by treaty. The effect of the 1951 amendments upon the power of the President to authorize the deferment of aliens admitted for permanent residence is not at all clear. As previously noted, a strictly grammatical reading of the amended language would indicate that the President lost all power to defer any alien admitted for permanent residence. Dicta in some cases support this view. United States v. Gredzens, D.C.Minn.1954, 125 F.Supp. 867, 871; United States ex rel. Rosio v. Shaughnessy, D.C.S.D.N.Y.1954, 134 F.Supp. 217. Judge Wyzanski in a carefully considered opinion in Schenkel v. Landon, D.C.Mass.1955, 133 F.Supp. 305, 306 held to the contrary.

In my opinion it is unnecessary to determine this question. Regardless of the validity of the regulations providing relief from military service to aliens admitted for permanent residence and claiming exemption under a treaty, petitioner freely advantaged himself of such regulations to request a deferment which was in fact granted. In my view this was sufficient under the Immigration and Nationality Act of 1952 to bar him from citizenship as an alien who applied for exemption from military service on the ground of alienage and by reason thereof was relieved from service.[2]

Petition denied.

1. See Ballester Pons v. United States, 1 Cir., 1955, 220 F.2d 399, 404–405.

2. See Schenkel v. Landon, D.C.Mass.1955,

133 F.Supp. 305, 310; United States ex rel. Rosio v. Shaughnessy, D.C.S.D.N.Y. 1954, 134 F.Supp. 217.