**Petition of MOSER.**

**No. 458512.**

United States District Court
E. D. New York.

July 15, 1949.

Harry Addelson, U. S. Naturalization Examiner, for Government.

Morris E. Vogel, New York City, for petitioner.

KENNEDY, District Judge.

This controversy arose out of a petition for naturalization. Proof was taken at two brief sessions, and at the close of one I dictated findings of fact, which I need advert to only briefly here for the sake of clarity.

The petitioner is 38 years of age and a native of Switzerland. He is the father of three children, all of whom are native-born citizens of the United States. He originally entered the United States in 1937 and on March 9, 1938, he petitioned for naturalization in the Southern District of New York. But before action on this petition was completed and on May 11, 1940, Moser, who was then an active officer with the Second Engineers Battalion of the Swiss Army and on leave of absence, was ordered to return to Switzerland, because at that time the Swiss feared an attack by the Nazis. In October 1940 Moser was permitted to return to the United States. He still retained his status as an active officer in the Swiss Army in the same regiment, but was again on leave of absence.

In 1945 he was placed on reserve. In the meantime and on October 19, 1940, the petitioner registered under the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 301 et seq. He at that time requested the advice of the Swiss Legation with respect to his obligation for military service in the armed forces of the United States, having in mind particularly the Convention of Friendship, Commerce, Extradition, etc. between the United States and the Swiss Confederation, concluded on November 25, 1850 11 Stat. 587, Malloy's Treaties and Conventions, Volume 2, p. 1763.

The Swiss Legation then took the matter up with the State Department, and after a number of conferences, our own State Department decided that the Selective Training and Service Act of 1940 was not intended to deny Swiss nationals any rights or privileges conferred on them by the treaty. Accordingly, through correspondence with the selective service authorities, the American State Department expressed the view that the filing of a claim for exemption from military service by non-declarant friendly aliens like Moser should not operate as a waiver or forfeiture of naturalization rights. The form for such claims of exemption, referred to as D.S.S. form 301, was then revised particularly to exclude a sentence reading in part as follows: "I understand that the making of this application, to be relieved from such liability, will debar me from becoming a citizen of the United States * * *."

In the form as revised, reference to the legal effect of a claim to be relieved from liability for training and service was merely dropped into a footnote so that instead of being a part of the document itself, it operated merely to call attention to the provisions of the statute. However, that in Moser's case even the footnote is meaningless is evidenced by the correspondence between himself and the Swiss Legation, and between the Legation and the State Department, the undeniable effect of which is that our own State Department took the position that the treaty rights of Swiss nationals were preserved and that they could claim exemption from American military service (at least while they were non-declarants) without waiving rights to naturalization in the future.

When the case first came on for hearing, the naturalization service was clearly under the impression that Moser had signed the original form D.S.S. 301, which amounts to an express waiver of naturalization in the future. Moser's attorney called attention to the fact that this was not the form of waiver that his client had signed: that on the contrary he had executed a waiver revised by agreement reached by the State Department, the Swiss Legation, and the Selective Service Bureau. Moser had signed this revised form on February 26, 1944.

The Naturalization Service then asked for a continuance on the ground of surprise, which was granted. At the continuance it proposed a new theory why naturalization should be denied: it said that Moser had perpetrated a fraud in procuring and executing the revised form D.S.S. 301, because as a matter of fact he was not then a non-declarant alien, but had filed a petition for citizenship in 1938. Moser's uncontradicted explanation of the facts in that connection were as follows: after he had filed his petition, he was, as noted above, ordered back to Switzerland. When he was able to re-enter he was told by the authorities that he would need a new visa, and would re-enter under the 1940 quota, which he did. He discussed this with someone in the naturalization bureau who told him that this had the effect of invalidating his then pending application for citizenship, a statement which he believed to be true. And the record bears this out, because in all the proceedings in connection with the first petition Moser failed to appear and the petition was ultimately dismissed. The filed papers in the first case also strongly bear out Moser's contention that it was void in the light of his departure for military service in the Swiss army. But more important than all this: Moser made full disclosure of his first petition to the authorities when he attempted to clarify his treaty rights.

Faced with these facts, the naturalization bureau then fell back on the claim that

the Selective Training and Service Act of 1940, as amended, superseded the treaty made between the United States and Switzerland in 1850, and that no matter what our State Department or selective service bureau had done, Moser, as matter of law, had waived his right to become naturalized, even though his specific intention to the contrary was proved and even though American government agencies had induced him to sign the "waiver" while they were under a completely erroneous notion of what the law was.

To support this remarkable contention, the bureau cites a number of cases, but I shall refer particularly only to one of these. In re Trachsel, D.C.S.D.W.D.Ohio 1921, 271 F. 779. Trachsel was a declarant alien and a citizen of Switzerland. His declaration of intention contained a renunciation of allegiance and fidelity to the Swiss confederation. (Cf. Moser's case: when he filed the instant application he was, in the judgment of both the American and Swiss authorities a non-declarant alien after full disclosure by him of the proceedings in connection with the first petition). Trachsel claimed his rights under the same treaty as that invoked by Moser, and in dealing with this fact the court in the Trachsel case lays down the law that an act of Congress later that a treaty supersedes the latter. The bureau quotes that sentence but omits to continue the quotation to include the very next sentence, which points out that the local board honored Trachsel's claim for exemption, and that its action was not under review by the court dealing with Trachsel's case. In other words, the case is no authority at all on the point here involved.[1]

But, ignoring the precedents, it is perfectly obvious that to the extent treaties may be affected, the pertinent language of the Conscription Act of 1917, 50 U.S.C.A.

§ 226 note, is very different from that found in the Selective Training and Service Act of 1940. The 1917 act imposed a liability to military service upon all male citizens not alien enemies who had declared their intention to become citizens. This express provision might be well considered an evidence of intention on the part of Congress to supersede protanto all treaties inconsistent with such liability. The 1940 act on the contrary imposes a liability, Section 3 (a), on all male citizens of the United States and all male persons residing in the United States. There is then a proviso that any neutral citizen may relieve himself from liability, and a further proviso that if he does, he shall thereafter be debarred from becoming a citizen of the United States. But this proviso may not be at all inconsistent with a treaty such as the Swiss Treaty of 1850, which relieves its nationals of liability to American military service.

But to me it seems that verbal gymnastics in this case become quite irrelevant. Nothing could be clearer than the fact that our own State Department recognized the immunity that Moser had under the treaty. Nor could anything be plainer, to me at least, than the fact that Moser never would have signed the revised form D.S.S. 301 if it were to be treated as a waiver of naturalization in the future. And so, assuming that the State Department made an egregious error, concurred in by the Selective Service Bureau and the Swiss Legation, I cannot see how that can be translated into a waiver by Moser of an important privilege, no matter what he signed upon the advice of these responsible agencies. In other words, even if the Swiss Treaty was intended to be broken by those who enacted the Selective Training and Service Act of 1940, I find as a fact that there never was a waiver of naturalization by Moser and that the petition should be granted.

---

[1] The decision is merely that Trachsel abandoned his petition when he claimed exemption.