**Petition for Naturalization of Thomas Joseph HEALY.**

**Petition No. 133252.**

United States District Court
N. D. California, N. D.

May 6, 1960.

Joseph S. Hertogs, San Francisco, Cal., for petitioner.

Daniel H. Lyons, Naturalization Examiner, San Francisco, Cal., for the government.

BURKE, District Judge.

The question here presented is whether the petitioner, having applied for an exemption from military service as an alien treaty national, executed an application for exemption under circumstances which would make the petitioner ineligible for United States citizenship under Section 315 of the Immigration and Nationality Act of 1952 (8 U.S.C.A. § 1426).

It is undisputed that the petitioner, a national of Ireland who was lawfully admitted to the United States for permanent residence, May 24, 1948, requested

exemption from military service in the armed forces of the United States on January 23, 1953, as a treaty national, and that he was thereby relieved of military service and training. Section 315 of the Immigration and Nationality Act of 1952 (8 U.S.C.A. § 1426) provides that an alien "who applies or has applied for exemption or discharge from training or service in the Armed Forces * * * on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States". It further states that "the records of the Selective Service System * * * shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien".

Beginning with the Selective Service Act of 1948 (54 Stat. 885) and continuing under the Universal Military Training and Service Act of 1951 (65 Stat. 75), 50 U.S.C.A.Appendix, § 451 et seq., which was in effect when petitioner was deferred from military service on January 23, 1953, Executive Orders were issued authorizing separate treatment and IV–C classification for certain aliens who were nationals of countries with which the United States had entered into treaties providing for reciprocal exemption from military service. These aliens were accorded relief from training and service without being required to file the application for relief, Form SSS–130, generally required of other classes of aliens, and the filing of which debarred those classes from citizenship under the Selective Service Law. The Executive Orders referred to are No. 9992 of August 28, 1948, and No. 10292 of September 24, 1951, and amendments.

Under E.O. 9992, classification in IV–C as a treaty national was available to the treaty national only if (1) he had not made a Declaration of Intention to become a citizen of the United States, and (2) the Department of State had approved a request for deferment made by the treaty country. Similarly, under E.O. 10292, classification in IV–C as a treaty national could be obtained in either one of two ways: (1) by the Department of State certification that the alien was exempt under terms of the treaty, or (2) by a showing of the alien himself otherwise that he was so exempt under the treaty.

Beginning April 24, 1953, National Headquarters of the Selective Service System instructed Local Boards that every alien thereafter desiring exemption under a treaty should be required to personally sign a statement requesting exemption from military service on the ground that he is an alien claiming exemption under a treaty and that his Selective Service file must show that he signs the request for exemption with full knowledge of the provisions of Section 315 of the Immigration and Nationality Act of 1952 (8 U.S.C.A. § 1426). In the absence of the signed statement, the registrant was no longer classifiable in IV–C (Local Board Memorandum No. 39, as amended). Treaty nationals who signed such statements on or after April 24, 1953, as required by that memorandum, and who, on the basis thereof were continued in IV–C or were classified in IV–C, are considered to have made an application for exemption within the meaning of Section 315 of the Immigration and Nationality Act of 1952 (8 U.S. C.A. § 1426), and are barred from naturalization. See Petition of Burky, D.C. 1958, 161 F.Supp. 736.

Petitioner's deferment statement was made on January 23, 1953, during the period between December 24, 1952, the effective date of the Immigration and Nationality Act, and April 24, 1953, the date of the amended Local Board Memorandum.

The Universal Military Training and Service Act was deemed by some authorities to have modified existing treaties to the extent that a treaty national could no longer be accorded exemption if he was a permanent resident of the United States (United States v. Gredzens, D.C.

1954, 125 F.Supp. 867). However, at least one other court has held that even after this legislation, the President retained the power to grant exemption to permanent resident treaty aliens by regulation (Schenkel v. Landon, D.C.1957, 133 F.Supp. 305, 306.

In support of his recommendation, the Designated Naturalization Examiner cites the unreported case of George Alfred Duerst, Petition No. 692233, heard in the District Court of the United States for the Southern District of New York, in New York City. Petitioner in that case, filed a petition for naturalization on August 28, 1957. On January 6, 1953, he had applied for relief from training and service in the armed forces of the United States as a treaty alien, and was relieved of such service. On July 14, 1958, the court denied said petition. Upon appeal, the Court of Appeals for the Second Circuit remanded the petition to the said District Court which reversed the original order and on November 12, 1959, granted the petition.

It can reasonably be assumed that treaty nationals, in applying for and obtaining relief from training and service in the armed forces of the United States, did not believe, in so doing, they were forever barring themselves from citizenship in the United States. They differed from neutral aliens whose countries had no such treaty providing for reciprocal exemption from military service. Hence, it is the opinion of this court that until April 24, 1953, when the Selective Service System specifically informed treaty nationals that they came within the provisions of Section 315 of the Immigration and Nationality Act of 1952 (8 U.S.C.A. § 1426), and they thereafter claimed exemption from training and service in the armed forces of the United States, they are not barred from naturalization. Classification in IV-C as a treaty national obtained in the manner provided for in E.O. 9992 and E.O. 10292 before April 24, 1953 is not regarded as having been accomplished by an "application" for exemption within the meaning of the conscription statutes and Section 315 of the Immigration and Nationality Act of 1952 (8 U.S.C.A. § 1426), but rather by an assertion of treaty national status cognizable under the regulations as requiring such classification.

There is evidence in this case that petitioner was sick at the time he applied for exemption from training and service in the armed forces of the United States and that, in fact, he did not understand the nature of his act. It does not appear necessary to determine his condition for it is immaterial if he was acting as a treaty national upon information that he was entitled to relief from military service as a treaty national. Thus, this case is comparable to the Petition of Moser (Moser v. U. S., 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729) where a claim to exemption was held not to bar naturalization.

Petitioner did not claim exemption from training and service in the armed forces of the United States subsequent to April 24, 1953. He enlisted in the United States Navy on February 1, 1956, which enlistment terminated November 18, 1958, under honorable conditions.

The court adopts as its findings of fact and conclusions of law the views as set forth above and grants the petition on the recommendation of the Designated Examiner.