**In re Petition for Naturalization of Michael Christopher REGAN.**

**No. 2271–642508.**

United States District Court E. D. New York.

Aug. 24, 1965.

Marjorie Jackson, Brooklyn, N. Y., Naturalization Examiner, for the Government.

Joseph L. Andrews, New York City, for petitioner.

ZAVATT, Chief Judge.

This is the second petition for naturalization filed in this court by the petitioner. His first petition (No. 551583) filed April 2, 1956 was denied by the late Judge Byers by an order dated and entered June 28, 1956. No appeal was taken. The present petition is denied.

Petitioner, born in Ireland, February 12, 1925, was admitted to permanent residence July 11, 1949, at age 24. He was subject to the Selective Service Act of 1948, 62 Stat. 604 (hereinafter "Act of 1948").[1] Petitioner filed a "Declaration of Intention" to become a citizen of the United States on September 23, 1949, approximately two months after he entered the United States. On December 7, 1949, pursuant to section 3 of the Act of 1948, he presented himself for and submitted to registration at Selective Service System Local Board No. 56 (hereinafter "Board") by which he was assigned Selective Service No. 50 56 25 885. The Board placed him in Class I–A on February 20, 1950. However, a physical examination of the petitioner by the Board on August 1, 1950, resulted in his reclassification in Class IV–F on August 21, 1950.

On January 21, 1951, the Board ordered him to appear on February 2, 1951 for another physical examination. Section 4(a) of the Act of 1948 provided for the relief of citizens of a foreign country from training and service under the Act if application therefor was made by such a foreign citizen (otherwise subject to such training and service) prior to his induction into the armed forces, in accordance with rules and regulations promulgated by the President.[2] If a foreign national was so relieved, however, he was thereafter debarred from becoming a citizen of the United States.[3] Pursuant to the authority vested in him by the Congress, the President, by Executive Order 9992, dated August 28, 1948, 13 Fed. Reg. 5033, 5035, 3 C.F.R. 750, 751 (1943–1948 Comp.), prescribed the manner whereby any alien resident (whether or not a treaty existed between the United States and the government of his native country) could be relieved of training and service under the Act of 1948 and be placed in Class IV–C. Only sections 622.18(b) and (c) of that Executive Order are relevant.[4] It is to be noted

1. Selective Service Act of 1948, TITLE I:
"TRAINING AND SERVICE
Sec. 4. (a) Except as otherwise provided in this title, every male citizen of the United States, and every other male person residing in the United States, who is between the ages of nineteen and twenty-six, at the time fixed for his registration, or who attains the age of nineteen after having been required to register pursuant to section 3 of this title, shall be liable for training and service in the armed forces of the United States."

2. Selective Service Act of 1948, TITLE I:
"Sec. 4. (a) * * * Any citizen of a foreign country, who is not deferrable or exempt from training and service under the provisions of this title (other than this subsection), shall be relieved from liability for training and service under this title if, prior to his induction into the armed forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President; * * *."

3. Selective Service Act of 1948, TITLE I:
"Sec. 4. (a) * * * but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States."

4. 3 C.F.R. at 751 (1943–1948 Comp.)
"§ 622.18 Class IV–C: Aliens. * * *
(b) In Class IV–C shall be placed any registrant who is an alien and who has not declared his intention to become a citizen of the United States and who is a national of a country with which there is in effect a treaty or international agreement exempting nationals of that country from military service while they are within the United States and for whom an application for deferment has been communicated to the Department of State by the government of that country and has been approved by the Department of State.
(c) In Class IV–C shall be placed any registrant who is an alien and who, prior to his induction, has made application to be relieved from liability for training and service in the armed forces of the United States by filing with the local board an Application by Alien for Relief from Military Service (SSS Form No. 130), executed in duplicate. The local board shall forward the original of such form to the Director of Selective Service through the State Director of Selective Service and shall retain the duplicate in the registrant's Cover Sheet (SSS Form No. 101).

that this Executive Order does not authorize the government of the country of an alien (with which there is in effect a treaty exempting its nationals from military service) to apply for "deferment" if its citizen has declared his intention to become a citizen of the United States. Such an alien could obtain relief from liability for training and service under the Act of 1948 only by applying himself and filing with his local board an application on SSS Form No. 130. Although petitioner and the Immigration and Naturalization Service (hereinafter "Service") referred to a treaty upon the argument and in their memoranda in the instant case, neither has cited the court to a treaty between the United States and Ireland. There is such a treaty (hereinafter "Treaty") which includes in Article III a provision for exemption from "compulsory service in the armed forces of the other party." TREATY OF FRIENDSHIP, COMMERCE AND NAVIGATION WITH IRELAND, Art. III, Jan. 21, 1950 [1950] 1 U.S.T. & O.I.A. 785, 789, T.I.A.S. No. 2155 (effective Sept. 14, 1950).[5]

The United States was engaged in the Korean conflict, "PROCLAMATION 2914, Proclaiming The Existence Of A National Emergency," 15 Fed.Reg. 9029, 3 C.F.R. 99 (1949–1953 Comp.), when the Board ordered petitioner to report on February 2, 1951, for a second physical examination. Before the return day of the Board's order and on January 29, 1951, petitioner claimed exemption from training and service under the Act of 1948 (which was still in effect) by exe-

cuting and filing with the Board, pursuant to Executive Order No. 9992, supra, SSS Form No. 130, "APPLICATION BY ALIEN FOR RELIEF FROM TRAINING AND SERVICE IN THE ARMED FORCES," stating therein, under oath: "I have read the NOTICE given below, and I understand that I will forever lose my right to become a citizen of the United States, * * * as a result of filing this application." As the result of the filing of this application the petitioner was reclassified IV–C (alien) by the Board on January 29, 1951. On November 19, 1951, petitioner was reclassified V–A because, by this time, he had passed the maximum draft age of twenty-six. He was so notified by the Board by SSS Form No. 110 mailed to him November 20, 1951. On May 13, 1955 (after the signing of the MILITARY ARMISTICE IN KOREA AND TEMPORARY SUPPLEMENTARY AGREEMENT of July 27, 1953 [1953] 4 U.S.T. & O.I.A. 234, T.I.A.S. No. 2782), the petitioner notified the Board in writing of his desire to withdraw his SSS Form No. 130 and consented to induction, stating: "I was advised to sign this form by the Irish Consul. I did not realize it might in the future, be the cause of my not becoming an American citizen. I am consenting to serve in the U.S. Army for two years." "[I] am now over the age of 26, but still desire to be inducted." The Board notified the petitioner to report on June 9, 1955 for another physical examination. Apparently, the petitioner had another change of heart for, in response to the Board's notice to report for a physical

---

5. [1950] 1 U.S.T. & O.I.A. at 789–790:
  "*Article III.*
  1. Nationals of either Party shall, except as otherwise provided in paragraph 2 of the present Article, be exempt from compulsory service in the armed forces of the other Party and shall also be exempt from all contributions in money or in kind imposed in lieu thereof.
  2. The foregoing paragraph shall not apply when both Parties are, through armed action against the same third country, in connection with which there is general compulsory service, concurrently conducting hostilities or enforcing

measures in pursuance of obligations for the maintenance or restoration of international peace and security. However, in this event, nationals of either Party in the territories of the other Party who have not lawfully declared their intention to acquire the nationality of the latter, shall be exempt from service in its armed forces if, within a reasonable period of time, they elect in lieu thereof to serve in the armed forces of the Party of which they are nationals; and the Parties will make the necessary arrangements for that purpose."

examination on June 9, 1955, he wrote a letter to the Board (which it received June 2, 1955) stating:

"I am sending all papers back as I inquired very much into my citizenship papers and I was told after serving two years in the Army I would not get them as the law is ran out the first of July and it is not going to be extended. Send on any papers I will have to sign. I will remain in 4 C as I was."

On April 2, 1956 petitioner (now 31 years of age) filed in this court petition for naturalization No. 551583. The Service recommended that the petition be denied on the ground that the petitioner was "debarred from citizenship by virtue of Section 315 of the Immigration and Nationality Act of 1952, and/or Section 4(a) of the Selective training and Service Act of 1948." Section 315 of the Immigration and Nationality Act, 8 U.S.C. § 1426 (enacted June 27, 1952 and in full force and effect) provides that an alien, who has ever applied for exemption and is exempted from military service on the ground that he is an alien, shall be permanently ineligible for citizenship.[6]

It is to be noted that the record of that proceeding for naturalization contained the petitioner's letter of May 13, 1955, in which he attempted to withdraw his SSS Form No. 130 and purported to consent to service in the armed forces as a draftee, at a time when he had passed the draft age; and in which he stated that "I did not realize it might in the future, be the cause of my not becoming an American citizen." Five years before a hearing was held on petitioner's first application for citizenship, the Supreme Court had held that an alien who claimed exemption from training and service under the Selective Training and Service Act of 1940 was not barred from citizenship when the facts showed that he "did not knowingly and intentionally waive his rights to citizenship." Moser v. United States, 341 U.S. 41, 47, 71 S. Ct. 553, 556, 95 L.Ed. 729 (1951). Upon the particular circumstances of that case, the judgment of the Court of Appeals, 182 F.2d 734 (2d Cir. 1950), reversing a judgment of this court, 85 F.Supp. 683 (E.D.N.Y.1949) granting the petition for naturalization was reversed. Ballester Pons v. United States, 220 F.2d 399 (1st Cir.), cert. denied, 350 U.S. 830, 76 S.Ct. 62, 100 L.Ed. 741 (1955), had been decided a year before the hearing on petitioner's final application. There a judgment of the District Court of Puerto Rico, denying a petition for naturalization, was affirmed where it was found that there were no such unusual circumstances as in Moser, supra, and that, when the alien applied to be relieved of liability to military service, he made an intelligent election as between two alternatives—exemption and being barred from becoming a citizen, as against no exemption, military service and qualification for citizenship.

On June 28, 1956, after a hearing, the late Judge Byers denied petitioner's final application "by virtue of Section 4(a) of the Selective Service Act of 1948, and Section 315 of the Immigration and Nationality Act of December 24, 1952."[7]

---

6. 8 U.S.C. § 1426:

"§ 1426. Citizenship denied alien relieved of service in armed forces because of alienage; conclusiveness of records

(a) Notwithstanding the provisions of section 405(b) of this Act, any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

(b) The records of the Selective Service System or of the National Military Establishment shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien."

For § 4(a) of the Act of 1948, see footnotes 1, 2 and 3.

7. "BYERS, D. J.:

The petition of the above-named Michael Christopher Regan having duly come on to be heard at a term of this

It is to be noted that petitioner's attorney in that proceeding (the same attorney who represents him on this second application) offered no counter findings or conclusions. Judge Byers' findings and conclusions can only mean that he found the petitioner to have claimed exemption from military service with full knowledge of his consequent ineligibility for United States citizenship.

Petitioner offers no new facts to support his present petition for naturalization. Rather he seeks to nullify the effect of Judge Byers' decision because of legislation, an Executive Order and an alleged change in Service policy all postdating petitioner's filing of SSS Form No. 130. He also fails to distinguish between a treaty entitling an alien to exemption and the acts of Congress, as implemented by executive orders, barring from citizenship.

▇ The petitioner contends in his memorandum that, when a treaty exempts an alien from military service in the armed forces of the United States, the exemption may not be "restricted by the imposition of conditions not contemplated by the treaty." Article III of the Treaty is substantially similar to the treaty with Spain considered in Ballester Pons v. United States, supra. In Bal-

lester it was contended that the provisions of the Selective Training and Service Act of 1940, 55 Stat. 845 (which are similar to those of the Act of 1948 quoted in footnotes 1, 2 and 3 hereof and to comparable provisions of the Universal Military Training and Service Act, 65 Stat. 75, hereinafter referred to), were inconsistent with the Treaty because they imposed conditions to obtaining the Treaty exemption. The exemption article of the treaty with Spain, like that with Ireland, "is not 'automatic' in the sense that the alien, if he is unwilling to render military service, may simply ignore a summons to service, or ignore the procedure, set up or authorized by legislative enactment, whereby the alien may claim his exemption from compulsory military service by making a declaration to the proper authorities of his unwillingness to serve. * * * This statutory provision, [§ 3(a) of the Selective Training and Service Act of 1940] it may be noted, enabled any neutral alien who was unwilling to render military service to the United States to be relieved from this liability, whether or not the alien was also covered by a treaty exemption as in Art. V of the treaty with Spain. Of course, this was a matter within the discretion of Congress; and the fact that

court held for the conduct of naturalization proceedings in Room 323 of this court on June 28, 1956, and the petitioner having been duly sworn and answered certain questions propounded to him by the court and having also appeared by attorney who argued on his behalf, and the said attorney having stated that he had received a copy of the proposed findings of fact and conclusions of law hereinafter stated and that he had no counter findings or conclusions to offer, the decision of the court is as follows:

The Findings of Fact and Conclusion of Law submitted by the U. S. Naturalization Examiner are hereby adopted:

FINDINGS OF FACT:

(a) That the petitioner is an alien who filed his petition for naturalization on April 2, 1956, under the general provisions of the Immigration and Nationality Act of 1952;

(b) That the petitioner, on January 29, 1951, executed and filed with his Se-

lective Service Board Form DSS 130, Application by Alien for Relief from Training and Service in the Armed Forces;

(c) That by reason of the execution of this form, the petitioner was relieved from liability of training and service by reason of alienage;

(d) That the petitioner never served in the land or naval forces of the United States.

CONCLUSION OF LAW:

(a) That the petitioner is debarred from citizenship by the virtue of Section 4(a) of the Selective Service Act of 1948, and Section 315 of the Immigration and Nationality Act of December 24, 1952.

In view of the foregoing, the petition for naturalization of the above-named Michael Christopher Regan, is hereby denied.

M.W.B.

U.S.D.J."

the statutory provision for exemption was broader than that required by treaty in no way derogates from the conclusion that the Spanish alien's right under Art. V of the treaty was fully protected under § 3(a) as amended, of the Selective Training and Service Act. The clause in the first proviso of § 3(a), that any person who made application to be relieved from such military service, in accordance with regulations prescribed by the President, 'shall thereafter be debarred from becoming a citizen of the United States', is not in conflict with Art. V of the treaty, for nothing in Art. V, and indeed nothing in the whole treaty, purports to impose any limitation upon the power of the respective countries to formulate the conditions of eligibility for naturalization." Ballester, supra, 220 F.2d at 401–402. Likewise, in the instant case, the Treaty with Ireland deals only with exemption. It is silent as to and does not contemplate whatever condition to the granting of the Treaty exemption had been or might thereafter be imposed by Congress. Thus there is no inconsistency between the Treaty with Ireland and the applicable acts of Congress and their implementing executive orders.

When the Act of 1948 was amended, June 19, 1951, by the Universal Military Training and Service Act (hereinafter "Act of 1951"), supra, it was implemented by Executive Order 10292, Sept. 25, 1951, 16 Fed.Reg. 9843, 9852, 3 C.F.R. 798, 811 (1949–1953 Comp.).[8]

Whereas, under the Executive Order of 1948 a treaty alien could not apply himself, as such, for exemption (his government could do so only if its national had not declared his intention to become a citizen of the United States), the Executive Order of 1951 now authorized a treaty alien to so apply in his own behalf without regard to a prior declaration to become a citizen of the United States. But the same penalty applied. Before the first petition was heard, that penalty provision was placed in 8 U.S.C. § 1426. See footnote 6.

The Act of 1948 and the Executive Order of 1948 were in effect when petitioner applied for exemption and was placed in Class IV–C (alien) in January 1951. Had the Act of 1951 and the Executive Order of 1951 been in effect when he applied for exemption and had he so applied as a treaty alien, he would have been exempted upon a mere showing that he was a treaty alien. Under either Executive Order, he would have obtained what he wanted, i. e., exemption from military training and service. In either event he would be thereafter debarred from becoming a United States citizen.

When the 1951 Executive Order authorized treaty aliens to apply as such for exemption, the Service did not prepare and furnish a form of such application. Thus, unlike aliens who applied on SSS Form No. 130 for exemption, no notice was given to those who applied as treaty aliens that they came within the provisions of the Act of 1951 or 8 U.S.C. § 1426. Cases arose in which,

---

8. 3 C.F.R. at 811 (1949–1953 Comp.)
   "§ 1622.42 *Class IV-C: Aliens.*
   \* \* \*
   (b) In Class IV-C shall be placed any registrant who is an alien and who has not been admitted to the United States for permanent residence but who has remained in the United States for a period exceeding one year and who has, prior to his induction, made application to be relieved from liability for training and service in the Armed Forces of the United States by filing with the local board an Application by Alien for Relief from Training and Service in the Armed Forces (SSS Form No. 130), ex-

ecuted in duplicate. The local board shall forward the original of such form to the Director of Selective Service through the State Director of Selective Service and shall retain the duplicate in the registrant's Cover Sheet (SSS Form No. 101).
   (c) In Class IV-C shall be placed any registrant who is an alien and who is certified by the Department of State to be, or otherwise establishes that he is, exempt from military service under the terms of a treaty or international agreement between the United States and the country of which he is a national."

absent such notice, one who claimed exemption as an alien treaty national subsequent to the Act of 1951 and prior to April 24, 1953, when the Service began to give adequate notice, was allowed to become a citizen of the United States, including In re Naturalization of Healy, 183 F.Supp. 651 (N.D.Cal.1960); In re Elken's Petition, No. 555417, E.D.N.Y. Jan. 29, 1959; Petition of Patrick Kenny, No. 640330, E.D.N.Y. Oct. 21, 1964. Petitioner argues that his situation is comparable to that of the petitioner in Healy, supra; Elken, supra; and Kenny, supra. There is no merit to this contention. The facts in the instant case are clearly distinguishable.

■ Petitioner seeks to insinuate himself into the class of those alien treaty nationals who, without notice, claimed exemption, upon the further ground that "it would be a gross miscarriage of justice to deny this petitioner citizenship when others who asserted their treaty national status, have been granted citizenship"; "[i]t is a cardinal principle of law that all persons appearing before our courts receive equal justice. If it was proper for the Service to withdraw its opposition to the granting of citizenship to Elken, * * * and Kenny, in the cases above cited, it is improper for the Service to raise the issue of res adjudicata in this case." Petitioner refuses to see the point—that he has been found to have claimed exemption with adequate notice and full knowledge of the consequences of his act.

■ The order of this court, dated June 28, 1956, denying petitioner's application for citizenship has the force and effect of a judgment of this court and is conclusively binding upon the petitioner in this second application which constitutes a collateral attack on that judgment. Lakebo v. Carr, 111 F.2d 732 (9th Cir. 1940); In re Samowich, 70 F.Supp. 273 (W.D.Wash.1947); In re Stasinopulos, 21 F.2d 71 (E.D.Mich.1927).

The petition is denied. Settle an order on or before ten (10) days from the date hereof.