**In re Petition for Naturalization of Paul William BAUD.**

**Petition No. 592.**

United States District Court
S. D. West Virginia,
Bluefield Division.

May 5, 1969.

**566**

Homer A. Holt, Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., for petitioner.

Ned Haimovitz, I. N. S., Pittsburgh, Pa., Naturalization Examiner.

CHRISTIE, District Judge:

This matter is before the Court on a petition for naturalization filed by one Paul William Baud, under the general provisions of the Immigration and Nationality Act of 1952, Section 310 et seq., 8 U.S.C.A. Section 1421 et seq. The denial of the petition is recommended by the Immigration and Naturalization Service on the ground that the petitioner is barred from citizenship by virtue of the provisions of Section 315 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1426, petitioner having claimed and obtained, as a resident alien and a citizen of a neutral country, exemption from military service. It has been stipulated by the parties that, except for the provisions of Section 315 of the Immigration and Nationality Act of 1952, petitioner is eligible for naturalization, he having been found in all other respects a fit subject for citizenship.

The petitioner was born in Lausanne, Switzerland, on August 9, 1929, of Swiss parents. He lived with his parents in the French part of Switzerland until 1945, when he was sixteen years of age. During this period he attended school where he was taught the usual subjects. In addition thereto, he was taught English two hours each week for one school year. In 1945, he left his home and moved to Bern, Switzerland, where he went into an apprenticeship to become a cook. Between 1948 and 1950, he attended a hotel administration school in Lausanne, Switzerland, working in the summers on a ship of the Holland-American Line and in a hotel in Zurich, Switzerland. On December 3, 1951, he immigrated to the United States. After his arrival in the United States he was employed initially in New York City as a busboy in the coffee shop of the Waldorf-Astoria Hotel, and later as a waiter in the home service department of that hotel. From 1951 to 1955, he worked in various establishments in New York, New Jersey, California and Florida, maintaining a mailing address during this period in Weehawken, New Jersey.

In April of 1955, he married a United States citizen and moved to White Sulphur Springs, West Virginia, where he obtained employment with the Greenbrier Hotel. Presently he is employed as the banquet manager and headwaiter at the Greenbrier Hotel and he and his wife are the parents of three native-born children, ages eleven, twelve and thirteen years, respectively.

On December 13, 1951, shortly after his arrival in the United States, petitioner registered with Local Board No. 22, Union City, New Jersey, and was assigned Selective Service No. 28–22–29–833. On January 11, 1952, he submitted a classification questionnaire, SSS Form No. 100, indicating he was a citizen of Switzerland and that he had not filed a Declaration of Intention to become a citizen of the United States. On January 23, 1952, after receiving a letter from the Legation of Switzerland confirming that petitioner was a Swiss citizen, he was classified by his local board and placed in Class 4–C, a resident alien exempt from military service. At the time petitioner received his classification from the draft board, a treaty in effect between the United States and Switzerland obligated the United States to exempt Swedish nationals residing in this country from military service. Executive Orders issued by the President in 1948 and 1951 permitted such "treaty aliens" to claim exemption from the military service upon submitting certain proofs of their status. Other aliens not having the benefit of a treaty between their countries of origin and the United States were required to file an application for relief from military service, Form SSS–130, which provided, among other things, that by making such application the alien would forever lose his right to become a citizen of the United States. See Gilligan v. Barton, 265 F.2d 904 (8th Cir. 1959). Thus, under the procedure followed by petitioner as a "treaty alien," he could avoid debarment from eligibility for citizenship. 42 Op. Atty.Gen., April 1, 1968. Petitioner, as a treaty alien, availed himself of this

procedure in obtaining exemption from service and, accordingly, as of January 23, 1952, he was not considered ineligible for citizenship.

The Immigration and Nationality Act of 1952, enacted June 27, 1952, by Section 315, 8 U.S.C.A. Section 1426, provided that

"(a) Notwithstanding the provisions of section 405(b) of this Act, any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States."

As is obvious from its wording, this provision of the Immigration and Nationality Act of 1952 (hereinafter referred to as the Act of 1952) had a retroactive effect, Barber v. Rietmann, 248 F.2d 118 (9th Cir. 1957), and could be construed as excluding from citizenship not only the non-treaty aliens who had received exemption from military service by filing Form SSS–130, but also the treaty aliens who had received exemptions by following the procedures outlined in the Executive Orders of 1948 and 1951. See Ballester Pons v. United States, 220 F.2d 399, 405 (1st Cir. 1955); In re Carvajal, 154 F.Supp. 525, 528, 529 (N.D.Cal.1957). Apparently it was also the position of the Justice Department that such exemption of treaty aliens had the effect of excluding them from citizenship, for in December of 1952, the Swiss Consulate sent circulars to all Swiss aliens informing them of the effects of the Act of 1952 and further stating that it was the position of the Department of Justice that a 4–C classification would prevent a person from becoming a citizen.

Beginning in April of 1953, National Headquarters of the Selective Service System instructed local boards that every alien thereafter desiring exemption

under a treaty should be required to personally sign a statement requesting exemption from military service on the ground that he was an alien claiming exemption under a treaty and that his selective service file should show that he signed the request for exemption with full knowledge of the provisions of Section 315 of the Act of 1952. See Petition of Healy, 183 F.Supp. 651 (N. D.Cal.1960). In the spring of 1953, pursuant to this instruction, petitioner received a communication from his local board advising him that the law had been changed by the Act of 1952 and that he was reclassified into Class 1–A. Having received this new classification, petitioner visited the Swiss Consulate in New York City for advice and was there informed that under the Act of 1952, any alien who had obtained a 4–C classification, whether a treaty or non-treaty alien, was ineligible for citizenship and that even if he should go into the military service he, nevertheless, would not be eligible to become a citizen of the United States. Further, petitioner was reminded that under Swiss law he was subject to punishment for serving in the armed forces of another country, and it was the advice of the Swiss Consul that petitioner sign the statement requesting exemption from military service. This advice was based not only upon the possible breach of Swiss law, but also upon the understanding of the Swiss Consulate that his previous 4–C classification had made petitioner ineligible for citizenship even if he should be inducted into the United States Military Service.

Later in the spring of 1953, petitioner appeared at his local board for a physical examination for induction into the armed forces. He was classified as 1–A on April 1, 1953, and on June 10, 1953, he was notified that he had passed the examination and was to report for induction into the armed forces on June 22, 1953. On June 18, 1953, petitioner again went to his local board and executed Form SSS 52–111 in which he made the following statement: "It is my desire to request that I, as a citizen of Switzerland, be classified as IV–C." Immediately above his signature on this form the provisions of Section 315 of the Act of 1952, including the ineligibility provisions, were set out in full, and petitioner testified that with his command of the English language he was able to read and understand the intent of the provisions of the form.[1] But he stated that he signed the form under the belief that the provision as to ineligibility was not of importance since his previous 4–C classification as a treaty alien had made him ineligible for citizenship. Petitioner maintains, and this Court believes it to be true, that if he had known that he was not at that time ineligible for citizenship he would not have sought the exemption, but would have permitted himself to be inducted into the armed forces.

Following the granting of his exemption and classification as IV–C, petitioner continued to check on his status to determine if there was any change in the law to permit him to regain his eligibility. On June 7, 1954, he requested the draft

---

1. In an attempt to impeach the credibility of petitioner, the Naturalization Examiner interprets his testimony as indicating that he signed Form SSS 52–111 but, because of his poor ability to read and understand the English language, he did not understand the meaning of the provisions of Section 315 set out on the form. If such were the petitioner's claim, the Court would also have some difficulty in accepting petitioner's testimony, however, a review of the transcript of the testimony in this case fails to reveal any statements to that effect. When petitioner finally explained the circumstances attending his signing of the form, he indicated that he understood what it meant but that he had been led to believe that his previous 4–C classification precluded him from obtaining citizenship and his signing the form or not signing the form would have no effect insofar as his citizenship status was concerned. The Court, on the basis of the evidence in this case and our observation of the petitioner testifying in court, accepts petitioner's testimony concerning his state of mind and the reasons therefor as being true.

board to allow him to rescind his application for exemption and in August of 1954, he visited the local and state selective service headquarters seeking to have his classification changed to permit induction and to make it possible for him to become a citizen. However, he was informed that the application for exemption could not be rescinded and he could not be guaranteed of the right to seek citizenship even if he voluntarily entered the armed forces. On May 13, 1955, he was informed by his draft board that they had reviewed his case and found that the evidence submitted did not justify the reopening of the case or reconsideration of his classification. Petitioner thereafter made no further effort to have his application for exemption rescinded.

It is now the position of the Immigration and Naturalization Agency that the 4–C classification obtained by petitioner prior to June 18, 1953, as a treaty alien, pursuant to Executive Orders of 1948 and 1951, did not render him ineligible for citizenship under the provisions of Section 315 of the Act of 1952, and this has been the position adopted by at least one court called upon to decide the question. See Petition of Healy, supra. Thus, it appears that petitioner was not ineligible for citizenship prior to June 18, 1953, and the only bar to his obtaining such citizenship is the bar asserted to arise under Section 315 of the Act of 1952 as a consequence of his obtaining exemption from military service by signing Form SSS 52–111 in 1953.

█ If the mere signing of the application for exemption and the allowance of an exemption pursuant thereto were the only issues to be resolved in this proceeding, the Court would have to deny Baud's petition for naturalization, for he has admitted reading and signing the application and it is a fact that as a result of having made this application he was exempted from military service in the manner contemplated by Section 315 of the Act of 1952. However, as interpreted by the Courts, the bar of Section 315 of the Act of 1952 requires more than

a signing of an application for an exemption and the granting of such exemption—to sustain the bar on the right to citizenship, the petitioner, in making the request for exemption, must have "knowingly and intentionally" waived his rights to citizenship. See Bachmann v. United States, 327 F.2d 415 (9th Cir. 1964). In the leading case on this subject, Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951), the Court held that where a petitioner acted under the mistaken belief that in signing the form he was not forfeiting his right to citizenship, then, not having made an intelligent choice, he could not be held to have waived his right to citizenship. In that case, as in the present case, the petitioner was acting on the advice of the Swiss Legation and this advice proved to be erroneous. The Court held that because of the misleading circumstances surrounding the petitioner's application for exemption, he had never had "an opportunity to make an intelligent election between the diametrically opposed courses required as a matter of strict law." Considering the circumstances of that case the Court was of the opinion that to bar a petitioner from citizenship "nothing less than an intelligent waiver is required by elementary fairness. * * * To hold otherwise would be to entrap petitioner." Though the Court was interpreting Section 3(a) of the Selective Training and Service Act of 1940 in the Moser case, later decisions have applied the same reasoning in determining whether the petitioners were barred from citizenship under Section 315 of the Act of 1952. Bachmann v. United States, supra, Petition for Naturalization of Koplin, 204 F.Supp. 33 (D.C.Colorado 1962); Brunner v. Del Guercio, 259 F.2d 583 (9th Cir. 1958); Petition of Bouchage, 177 F.Supp. 887 (S.D.N.Y.1959).

█ Applying the tests utilized by the Courts in the above-mentioned decisions, this Court must find that petitioner never made an "intelligent waiver" of his rights to citizenship. The record establishes to the satisfaction of the Court that when petitioner signed the exemp-

tion form he was acting under the belief that his right to citizenship had already been forfeited and, though this misconception was due to the advice of the Swiss Consulate, the Consulate was apparently acting upon information communicated to it by the United States Government. Under such circumstances, petitioner never had an opportunity to make an intelligent election between exemption and no citizenship or no exemption and citizenship. By 1953, when petitioner was called upon to make a decision, his actions were controlled by the belief, apparently shared by the United States Government as well as some of the Courts, that, contrary to his intentions, his right to citizenship had already been forfeited. Thus, the choice he made in signing Form SS 52–111 was between going into the armed forces or not going into the armed forces, and, insofar as he was concerned, his action had no effect whatsoever upon his obtaining or not obtaining citizenship. As thus understood, the Court could not, under any view of the facts of this case, characterize petitioner's action as an "intelligent election," Moser v. United States, supra, and for that reason we are of the opinion that petitioner is not barred from seeking naturalization by the provisions of Section 315 of the Immigration and Nationality Act of 1952. To hold that petitioner is debarred from citizenship where he acted under a misapprehension, apparently shared by both the Swiss Consulate and the United States Government, and where such action was based, at least indirectly, upon the position adopted by the Department of Justice, would be to entrap petitioner just as surely as the Supreme Court held that the petitioner would have been entrapped in the *Moser* case.

The objection of the Examiner for the Immigration and Naturalization Service to the granting of the petition must, therefore, be overruled.

### ORDER

For the reasons above appearing, it is hereby

Ordered that the recommendation of the Immigration and Naturalization Service, dated and filed herein on February 14, 1969, that the petitioner, Paul William Baud, is ineligible for citizenship in the United States of America and that his petition, therefore, be denied, be, and the same is, hereby overruled.

And it having been stipulated by the Immigration and Naturalization Service that, except for the provisions of Section 315 of the Immigration and Nationality Act of 1952, the petitioner, Paul William Baud, would be otherwise eligible for citizenship, it is further hereby

Ordered that the petitioner, Paul William Baud, be admitted to become a citizen of the United States of America upon his taking and subscribing to the oath of allegiance prescribed by law in such cases.

